UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X



FELICITAS DEL CARMEN VILANUEVA
GARNICA,

                    Plaintiff,

-against-

MALU CUSTER EDWARDS a/k/a MALU
HURLEY and MICHAEL HURLEY a/k/a MICKY
HURLEY

                    Defendants.

------------------------------------------------------------- X

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT**

13 Civ. 3943 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

      Plaintiff's complaint alleges that Defendants fraudulently induced Plaintiff to move from Chile to New York to work as their children's nanny. The complaint alleges that upon arrival to the United States, Plaintiff was subjected to involuntary servitude compelled by the intentional deprivation of medical care, food, and Defendants' refusal to stop their small children (all under age 7) from physically abusing her. The complaint also alleges that Defendants further compelled this involuntary servitude by restraining her movement and locking her in a room multiple times as well as by legal, financial, and psychological coercion. Plaintiff brings these claims under the Trafficking Victims Protection Act, 18 U.S.C. §§ 1589, 1590, 1592, 1594(a)-(b) ("TVPA"). She also brings claims under New York law for fraudulent misrepresentation, breach of contract, and negligent infliction of emotional distress based on the same set of facts.

      Defendants have moved for summary judgment at the conclusion of discovery on all of Plaintiff's claims. Plaintiff's testimony is replete with inconsistencies and regularly contradicts her complaint, and the evidence does not permit a reasonable juror to find for Plaintiff on her §1589 claims. Without any federal claims remaining, I decline to exercise

jurisdiction over Plaintiff's remaining state law claims. Accordingly, Defendants' motion for summary judgment is granted and the complaint is dismissed.

## Legal Standard

*A. Summary Judgment*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). Normally, summary judgment does not involve findings of credibility, as that is the province of the jury. "However, when the facts alleged are so contradictory that doubt is cast upon their plausibility, I am authorized to pierce the veil of the complaint's factual allegations, dispose of some improbable allegations, and dismiss the claim." *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 470 (S.D.N.Y. 1998) (Sotomayor, J.) (internal quotations omitted).

Furthermore, in "the rare circumstance where the Plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the Plaintiff and thus whether there are any genuine issues of material fact, without making some assessment of the Plaintiff's account." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal citations and quotations omitted). In such a case, the court may assess whether there were any genuine issues of material fact in Plaintiff's testimony and whether or not a reasonable jury could have credited Plaintiff's testimony. *Id.* at 551. *See also Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98 (2d Cir. 2011); *Cruz v. Reiner*, 2013 WL 5676303 (E.D.N.Y. Oct. 6, 2013); *Taylor v. Ridley*, 904 F. Supp. 2d 222 (E.D.N.Y. 2012).

## B. 18 U.S.C. § 1589 (Forced Labor Statute)

A Defendant violates 18 U.S.C. § 1589 (the "Forced Labor Statute") when she:

Knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—

(1) By means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person ("Section 1")

(2) By means of serious harm or threats of serious harm to that person or another person ("Section 2")

(3) By means of the abuse or threatened abuse of law or legal process ("Section 3"); or

(4) By means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint ("Section 4").

18 U.S.C. § 1589. "In other words, someone is guilty of forced labor if he intends to cause a person in his employ to believe that if she does not continue to work, she will suffer the type of serious harm—physical or nonphysical, including psychological, financial, reputation harm—that would compel someone in her circumstances to continue working to avoid that harm." *United States v. Dann*, 652 F.3d 1160, 1169-70 (9th Cir. 2011).

### PLAINTIFF'S ALLEGATIONS

Plaintiff's complaint alleges that the Defendants:

1. Took Plaintiff's passport.

2. Allowed their children to regularly hit Plaintiff and doing nothing to discipline them.

3. Failed to provide Plaintiff with adequate food and nourishment.

4. Regularly locked Plaintiff in rooms.

5. Paid Plaintiff only $800 during the two months she worked for them, far below the state and federal minimum wages.

6. Denied Plaintiff access to medical care.

3

7. Only permitted Plaintiff to leave the apartment to run errands and gave Plaintiff no days off. They also required a work schedule of 12-15 hours daily with only a 15 minute lunch break and no dinner break.

8. Instructed Plaintiff not to speak with anybody else in order to further isolate her.

9. Threatened Plaintiff regarding their family's power and connections, causing her to fear leaving.

10. Refused to pay for Plaintiff's plane ticket when she requested to return to Chile, as included in the contract.

Allegedly as a result of Defendants' actions, Plaintiff permanently left the Defendants' employment on March 14, 2011. She went to Safe Horizons, a victims' service agency in New York, where she was placed in a hotel for a few nights before being placed in a shelter. She subsequently received medical attention and legal advice.

Virtually all of Plaintiff's allegations are contradicted by her own deposition testimony.

1. *Took Plaintiff's Passport*

Plaintiff's complaint alleges that Defendants improperly kept Plaintiff's passport from her while she was in the United States, thereby compelling her labor because she was unable to leave the United States without it. Compl. ¶ 178. Plaintiff testified, however, that she possessed her passport at all times while in the United States. Pl. Tr. 212:19-25.

2. *Allowed Children to Physically Abuse Plaintiff*

Plaintiff alleges that Defendants allowed their three young children—ages three, five, and seven—to hit Plaintiff in order to make her fear for her job. Pl. Tr. at 340:2-341:9. However, Plaintiff testified that she did not believe her own allegation, that the mother defendant, Malu Custer Edwards, purposefully allowed the children to hit her. *Id.* at 382:15-22.

4

Further, the vast majority of the alleged physical abuse was by Defendants' three-year-old daughter, Olympia. Plaintiff testified that Olympia only came up to Plaintiff's waist when Plaintiff was sitting, *id.* at 296, and light enough for Plaintiff to pick up. *Id.* at 303. Yet, Plaintiff alleges that Olympia hit her with a small plastic chair every day, which caused bruising. *Id.* at 296-97. Plaintiff's allegations of abuse are implausible.

3. *Starved Plaintiff*

The complaint alleges that Defendants starved Plaintiff and their children, purchasing only milk, yogurt, eggs, and bread on an infrequent basis. The complaint alleges that, since Plaintiff was unable to purchase enough food, she was unable to properly nourish herself or ward off infection and illness. Compl. ¶¶ 1, 115-17, 121. Plaintiff testified, however, that she had enough money to purchase additional food for herself and did so regularly, including chocolate, candy, fruit and bread. Pl. Tr. at 478:17-478:12. She also testified that Defendants had groceries delivered to their home and that the children ate waffles, pasta, cookies, juice, cheese, eggs, meatballs, lettuce, and tomatoes, and that she could eat "whatever" food was available in Defendant's refrigerator and pantry. Pl. Tr. at 251-52, 329, 374, 1134. The documentary evidence shows that Defendants spent a minimum of $1,259.00 on groceries during Plaintiff's eight week employment and that they bought ground beef, chicken, apples, bananas, carrots, tomatoes, and lunchmeat as well as yogurt, cereal, and eggs. Newman Decl. Ex. X.

4. *Regularly Locked Plaintiff in a Room*

The complaint alleges that Defendants forced Plaintiff's labor and kept her from leaving by habitually locking her in a room. Compl. ¶¶ 1, 90. However, Plaintiff testified that she was never locked in any room. Pl. Tr. 226:3-14.

5

5. *Kept Plaintiff Financially Desperate*

In Plaintiff's complaint, she alleges that Defendants paid her only $800 during the time she worked for them in the U.S. Compl. ¶96. However, in her declaration in support of her U-Visa, Plaintiff attests to being paid $1,500 for her services in New York. Newman Decl. Ex. R ¶¶19, 29. And regardless, courts have held that wage underpayments do not violate the Forced Labor Statute because violating a labor regulation is not considered an abuse of law or process under the statute. *Alvarado v. Universidad Carlos Albizu*, 2010 WL 3385345 (S.D. Fla. Aug. 25, 2010); *Pasamba v. HCCA International, Inc.*, 2008 WL 2562928 (D. Az. June 24, 2008). Plaintiff has previously sought and received claimed wages through a proceeding with the New York State Department of Labor ("DOL") in 2011. Compl. ¶ 163. In that proceeding, Plaintiff submitted the number of hours she claimed to have worked and the January 1, 2011 contract that she and Edwards executed. Newman Decl. Ex. W. The DOL accordingly required Edwards pay Plaintiff for all hours she claimed at the contractual rate of pay, in the amount of $6,302.54, which Edwards did. *Id.*

6. *Denied Plaintiff Medical Care*

Plaintiff alleges that Defendants' "denied Plaintiff access to health care" by telling her that U.S. hospitals would not help her because she was not a citizen. However, Plaintiff admits receiving contrary information from both the Embassy and a 3-1-1 operator. Pl. Tr. 404-05, 747-48.

Plaintiff also alleges that Defendants failed to fill her prescription, as promised. However, the Complaint alleges that she asked Edwards for her medication on approximately March 4, 2011, Compl. ¶¶ 107-08, and Plaintiff admits that Edwards advised her in early March that she was having the prescription shipped to New York from South America via FedEx. Pl.

6

Tr. at 744-45. The record shows that Edwards requested the medication on March 8, 2011, and it arrived on March 15, 2011. *See* Newman Decl. Ex. AA; Edwards Tr. 614-15. The inquiry is likely meaningless, anyway, as Plaintiff has not alleged that failure to fill a prescription for an employee in a timely manner is at all relevant to the forced labor statute.

### 7. *Prevented Plaintiff from Leaving the Apartment*

The complaint alleges that Defendants regularly prevented Plaintiff from leaving their apartment and did not allow Plaintiff any time off. Compl. ¶¶ 1, 90, 99, 138. However, Plaintiff testified that she regularly left the apartment on her own for up to nine hours at a time and that during this time she ran errands, attended church, went for walks, visited museums, and made friends. Pl. Tr. at 491, 590, 661, 653, 699, 823. And Plaintiff's personal diary reflects that she left Defendants' home to run errands nearly every day for a month. Newman Decl. Ex. Y.

### 8. *Isolated Plaintiff*

Plaintiff's complaint alleged that the Defendants attempted to isolate her from others so that she would not be able to escape from them or get help. However, Plaintiff testified that she was frequently out of the apartment for hours at a time, sometimes alone, and that she met and interacted with others. Pl. Tr. at 217, 221, 494, 501, 531, 563, 723. She also testified that she spent nearly $300 on two mobile phones and multiple phone cards, and that she spoke with her mother and son in Chile on a daily basis. *Id.* at 585:2-14, 578, 588, 817-18. She also testified that Defendants invited and allowed her to call her family in Chile from the family's landline. *Id.* at 505.

### 9. *Threatened Plaintiff with Harm*

The complaint also alleges that Plaintiff felt threatened by Defendants, who would "often" talk about how powerful their family was, and that they prevented her from leaving their employ by threatening her with their power and influence. Compl. ¶¶ 126, 132, 136. However,

7

Plaintiff testified that there was only one instance when Defendants allegedly said their family was powerful, that she was not afraid of Defendants, and that she did not think that quitting her job would have resulted in any harm to her. Pl. Tr. at 395, 399, 752, 836-37, 164, 338-340, 399, 400, 836-37, 839-40, 822. Plaintiff further testified that Defendants did not do anything to prevent her from leaving her job at any time and that she continued working for them because she hoped their attitude would improve. *Id.* at 1161-63, 393-94, 739-42. Plaintiff also testified, however, that she was not afraid of standing up to Defendants, that she did not think any harm would come to her if she failed to listen to or follow Defendants' directions, and that she was not afraid of losing her job. *Id.* at 340, 399, 400, 836-37, 842-43.

10. *Refused to Purchase Plane Ticket*

Plaintiff testified that she asked Defendants "many times" to purchase her a plane ticket to return home to Chile. But, when asked the dates of these requests, she identified only March 5, 2011. *Id.* at 897, 809. She also testified that, while she requested a plane ticket on March 5, 2011, she did not actually give notice or quit her job on that date. *Id.* at 864-66. Plaintiff quit on March 14, 2011, and Defendants then purchased a plane ticket for her. *Id.* 850.

**ANALYSIS**

*A. §1589 Forced Labor Statute Claims*

Plaintiff's testimony contradicts virtually all the serious allegations in her complaint. Plaintiff's Rule 56.1 Counter-Statement, although liberal in conclusory denials, gives no citation whatever to any supporting evidence for 43 of 103 contested Rule 56.1 statements. Pursuant to Local Civil Rule 56.1(d), bald denials cannot raise a genuine issue of material fact, and Plaintiff must accompany each denial with a citation to admissible evidence.

Plaintiff testified that she had a contentious relationship with Defendants. However, "not all bad employer-employee relationships or even bad employer-immigrant nanny relationships will constitute forced labor. . . . Congress intended to address serious trafficking, or

8

cases where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence." *Dann.* 652 F.3d at 1170 (internal citations and quotations omitted). To survive summary judgment, a Plaintiff must provide "some hard evidence showing that [her] version of events is not wholly fanciful," as "conclusory allegations or unsubstantiated speculation" are insufficient." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). Plaintiff cannot satisfy that in this case because her contradictions and inconsistencies are so rampant that they "transcend credibility concerns and go to the heart of whether the party has raised genuine issues of material fact to be decided by a jury." *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011.

Plaintiff is unable to raise a genuine dispute about whether Defendants *intentionally* caused her to fear sufficiently serious physical, psychological, or financial harm to compel someone in her circumstances to continue working. *See United States v. Dann*, 652 F.3d 1160, 1169-70 (9th Cir. 2011). Accordingly, summary judgment is granted with respect to Plaintiff's §1589 claim.

### B. Abandoned Federal Claims

In her complaint, Plaintiff also brings claims under 18 U.S.C. §§ 1590, 1592, 1594(a), and 1594(b). Defendants moved for summary judgment on these claims and Plaintiff did not attempt to defend these claims in her opposition. They are therefore abandoned and dismissed. *See Jackson v. Federal Express*, 2014 WL 4412333 (2d Cir. Sept. 9, 2014) ("[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims."); *Taylor v. City of New York*, 269 F. Supp. 2d 69, 75 (E.D.N.Y. June 23, 2003) (same). And regardless, they would fail on the merits for the same reasons as her §1589 claim because they rely upon the same factual allegations that Plaintiff has so thoroughly contradicted.

9

*C. Remaining State Law Claims*

Having dismissed all of Plaintiff's federal claims, I decline to exercise jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(a). Accordingly, Plaintiff's claims for negligent infliction of emotional distress, breach of contract, and fraudulent misrepresentation are dismissed.

## CONCLUSION

Plaintiff's claims are not supported by evidence, and no jury could reasonably find in her favor. Defendants' motion for summary judgment is granted.

The Clerk shall grant judgment to Defendants, dismissing the complaint with prejudice and with costs, and shall mark the motion (Doc. No. 13) terminated and the case closed.

SO ORDERED.

Dated: December 10, 2014
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

10