UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FELICITAS DEL CARMEN VILLANUEVA
GARNICA,

                                        Plaintiff,

                                                          DOCKET # 13-CV-3943 (AKH)

                    vs.

                                                          **MEMORANDUM OF LAW**

MALU CUSTER EDWARDS aka MALU
HURLEY and MICHAEL HURLEY aka MICKY
HURLEY,

                                        Defendants.

## STATEMENT OF FACTS

        Plaintiff's Counsel Stoll, Glickman and Bellina LLP ("SGB") submit this memorandum of law in support of their opposition to defendants' motion to compel counsel to pay costs pursuant to 28 U.S.C. §1927. The motion is supported by the Declaration of Andrew B. Stoll ("Stoll Dec"), as well as by Declarations of Christopher Q. Davis and Rachel Haskell, the attorneys who were assigned to this matter until their departure from SGB after the summary judgment motion was fully briefed.

        The complete facts relevant to this motion are attached in the Declarations; following is a brief narrative summary. Defendants' motion arises from litigation by Plaintiff, their former nanny, who they brought to New York City from their native Chile. After Plaintiff left defendants' employ, she obtained a United States Department of Labor ruling against them for having paid her illegal wages- wages which also grossly deviated from the employment contract defendants signed with Plaintiff in Chile. The Department of Labor required defendants to pay

Plaintiff over $6000.00 over what they had already paid her for her brief tenure with defendants, based on the hours Plaintiff claimed to have worked for defendants.

With the assistance of Safe Horizons, a victims' advocacy group, Plaintiff was referred to Christopher Q. Davis ("Davis"), a non-equity, non-voting partner at Stoll, Glickman & Bellina, LLP ("SGB").  Upon spending hours with Plaintiff and her case manager and interpreter, and many more hours in research and follow up conversations with them, Mr. Davis recommended SGB represent the client, which SGB readily agreed to.  The case appeared consistent with SGB's civil rights and employment practice, and based on Davis' interviews with the client and the Department of Labor finding, consistent with SGB's driving philosophy of remedying abuse of power and authority through litigation.

As time went on, Davis and associates working under him came to realize Plaintiff was contradicting a prior allegation which Davis had included in the Complaint.  Davis volunteered the contradiction to the defense, and asked to amend the complaint; a series of emails and conversations followed, culminating with Plaintiff's stipulation to file an amended complaint "to revise certain inaccuracies and make certain clarifications". Exhibit 1, 1-39, Exhibit 2.[1]  Davis was clear in those conversations that those inaccuracies would not be the basis of the action going forward.

Defendants revoked their consent to the previously stipulated amended complaint, indicating they had further objections to the Complaint based on inconsistencies developed during Plaintiff's deposition. Exhibit 1, 40.  Again, Davis and Rachel Haskell ("Haskell") an associate working on the matter, in good faith worked with defendants to address their further objections to the complaint.  Davis addressed counsel's concerns in an email reading "(g)ood point.  If there are errors that should be fixed, we will certainly do so.  I recall her testimony on

---

[1] Exhibits refer to those appended to the Declaration of Andrew B. Stoll ("Stoll Dec").

the issues you raise and believe changes are necessary.  We will review this on Monday and submit a new pleading for your review". Exhibit 1, 41.

Davis and Haskell did provide a proposed amended pleading. Exhibit 1, 45-76.  But with little explanation, defendants reaffirmed their objection to the filing of an amended complaint. Exhibit 1, 77.  Defendants themselves then drafted a letter for Davis to send to the Court, advising the Court Plaintiff would not be amending the complaint, and defendants asked Davis and Haskell to file the letter; Davis and Haskell complied. Exhibit 1, 79-81.  As he had assured defendants, Davis did not, in answering the summary judgment motion, pursue a theory of "physical coercion", or rely upon any discredited allegations, to support the claims.

After the case was fully briefed, Davis, Haskell and the other associate in SGB's employment practice left SGB and opened the Law Office of Christopher Davis, associating with another existing firm.  The split was not amicable and litigation is pending among the three firms.  Plaintiff, who was in the hospital and seriously ill, was in no shape to discuss leaving SGB with Davis and Haskell, and she was not advised of their move.  When oral arguments were scheduled on the summary judgment motion, an SGB partner, Andrew B. Stoll, reviewed the file and the briefings, and represented the case before the Court.  Though Stoll had reviewed the briefings and the law, he had not reviewed the communications and history concerning the attempts to amend the complaint.

By the time the Court granted defendants' motion to dismiss, SGB had invested over 500 lawyer hours on the case, and over $24,000.00 in disbursements.

I.    COUNSEL'S CONDUCT WAS NEITHER "UNREASONABLE" NOR "VEXATIOUS", AND DID NOT MEET THE BAD FAITH THRESHOLD REQUIRED UNDER 28 USC § 1927.

Imposition of a § 1927 sanction requires a "clear showing of bad faith". Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986) (citations omitted).   "That bad faith may be inferred only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Salovaara v. Eckert, 222 F.3d 19, 35 (2d Cir.2000) (citations and quotations omitted).  A bad faith finding requires "a high degree of specificity in the factual findings". Enmon v. Prospect Capital Corp., 675 F.3d 138, 143 (2d Cir. 2012) (explaining that sanctions under court's inherent power and § 1927 are virtually identical).  The statute's purpose is to "deter unnecessary delays in litigation" and it focuses on a "course of conduct", rather than "particular papers". United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 948 F.2d 1338, 1345-1346 (2d Cir. 1991); Bowler v. U.S. I.N.S., 901 F.Supp. 597 (S.D.N.Y. 1995).

The record in this matter, almost entirely omitted by defense counsel's motion, demonstrates almost exactly the opposite of bad faith.[2]  The initial inaccurate statement was volunteered by Davis in advance of the initial conference, in an effort to obtain consent to amend the complaint and remove the objectionable allegations concerning being locked in the room. Exhibit 1, 1.  Davis and Haskell drafted an amended complaint and a stipulation, conceding "certain inaccuracies", in support of filing that amended complaint.[3] Exhibit 1, 8-31, Exhibit 2.

_____

[2] The defense' omission of Plaintiff's attempts to amend the complaint, as detailed in the Stoll Declaration, is ironic and disappointing in the context of a sanctions motion, as they lead to a deeply inaccurate picture of the inaccurate proceedings they complain of.  Such omissions are even more surprising since defense counsel at oral argument on the summary judgment motion in good faith tried to help me clarify the history for the Court, knowing I was unfamiliar with the earlier dance over the complaint. Stoll Dec ¶45.

[3] There is no claim that the initial inaccurate statements were in any manner fabrications by counsel- rather, defendants refer to Plaintiff's "mental illness" to explain the allegations. Defendants Memorandum of Law in Support of the Motion for Summary Judgment, 13.  In fact, Plaintiff has been quite ill since long before the summary judgment motion, though it is not clear what caused the conflicting accounts.

Defense counsel then withdrew their consent to such filing as they sought further edits to the complaint, and drafted a letter for Davis to file, withdrawing his intention to amend the complaint. Exhibit 1, 79-81.  Davis complied with their request.

As defendants requested further amendments to the complaint, in light of further discovery revelations, Davis and Haskell fully engaged defense counsel and cooperated with them on their additional objections.  Davis wrote, "I recall her testimony on the issues you raise and believe changes are necessary. We will review this on Monday and submit a new pleading for your review". Exhibit 1, 41.  And indeed, Davis submitted that proposed new pleading to defendants. Exhibit 1, 45-76.  Defense counsel rejected it, though it is not clear whether it was on substance, or procedure, as he had written, "since we are filing a summary judgment motion in a week, it may be too late for us to consent to an amended complaint." Exhibit 1, 44.

Defendants have cited two cases for the simplified proposition that persisting in litigation after learning of the falsity of a client's allegations is sanctionable under § 1927. But the cases are inapplicable here.  The first case defendants cite, Levine v. F.D.I.C., 2 F.3d 476 (2d Cir. 1993), contrary to the defense' representation, ruled solely and explicitly on Rule 11 grounds, and not § 1927 sanctions, "for Greenspan's violation of Fed.R.Civ.P. 11".  But "(u)nlike Rule 11... which imposes an objective standard, § 1927  requires a clear showing of bad faith." Novelty Textile Mills, Inc. v. Stern, 136 F.R.D. 63, 72-73 (S.D.N.Y. 1991) (citations and quotations omitted).

The second case cited by defendants does not address merely "unfounded claims", as defendants write.  Defendants edited out an important word in their brief- the case repeatedly cites "*legally* unfounded claims", an entirely different concern. Gollomp v. Spitzer, 568 F.3d 355, 364, 370 (2d Cir. 2009).  In that case, the attorney in question had repeatedly been

admonished and had claims rejected on sovereign immunity grounds, but persisted in bringing claims against New York State in federal court- and had even previously been sanctioned for doing so.

That is a far cry from this case where Davis spontaneously disclosed the initial, *factual* inaccuracies, defendants *revoked* their consent to correct those inaccuracies as they requested additional changes, Davis made the additional changes requested, and defendants then said it was too late.  Not only have defendants failed to meet their burden of demonstrating, with a "high degree of specificity", a "course of" "unreasonable" *and* "vexatious" and "bad-faith conduct" that delayed the proceedings, but the actual record, almost entirely omitted by defendants, demonstrates Davis and Haskell's reasonable, good faith attempts to have a "clear and correct record".  Exhibit 1, 43.  Defendants have failed to articulate the "improper purpose" they contend motivated the conduct they object to, and have neglected to even cite the bad faith standards applicable to their application which, respectfully, should be denied.

## II.   THERE HAS BEEN NO SHOWING THAT COUNSEL "MULTIPLIED THE PROCEEDINGS".

28 U.S.C. §1927 provides that an attorney *may* be required to pay "the *excess* costs... reasonably incurred because of" sanctionable conduct. 28 U.S.C. § 1927 (emphasis added). The section "should be construed narrowly and with great caution, so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." Mone v. C.I.R., 774 F.2d 570, 574 (2d Cir. 1985) (internal citations omitted).  The sanctions can only reach "excess" costs, and not all litigation costs. Roadway Express, Inc. v. Piper, 447 U.S. 752, 758–59 (1980).  Defendants have not alleged that the litigation was delayed in any way by any of counsel's course of conduct. Defendants have not alleged that the case itself would have been dismissed or withdrawn prior to summary judgment, had the complaint been amended as the parties had been discussing.  In fact,

Davis and Haskell were always clear they agreed with the changes suggested by defendants, and did not oppose defendants' summary judgment motion with a different view of the facts.

Instead, Davis and Haskell advanced a colorable claim of "psychological coercion", as they had consistently made they would do.  In support, they discussed "misrepresenting the duration of Plaintiff's contract (by a whole year), failing to pay her the wages they agreed to pay her (or those required by law), misleading her about the benefits and protection available to her in the United States, misleading her into believing workers in the United States live on as little as $1,300.00 for 30 days of full time work, refusing to address the regular physical assaults committed by her children against Plaintiff, and refusing to provide a return flight to Chile citing her '2 year agreement' on those occasions when she attempted to quit." Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, 1-3, docket 24.  In support of their opposition, Davis and Haskell cited cases that supported the claims in the absence of physical force, including Aguirre v. Best Care Agency, Inc., 961 F. Supp. 2d 427, 444 (E.D.N.Y. 2013) (summary judgment on TVPRA denied, even though no physical force); Elat v. Ngoubene, 993 F. Supp. 2d 497, 2014 WL 253411, at *22 (D. Md. 2014) (summary judgment denied even though no physical force); and Nunag- Tanedo v. E. Baton Rouge Parish Sch. Bd., 790 F. Supp. 2d 1134, 1145 (C.D. Cal. 2011) (summary judgment denied where financial coercion, not physical force alleged).

Ultimately, Plaintiff had a difficult hurtle to overcome to survive summary judgment. But the Second Circuit's defense, in Mone, of creativity in the service of vigorous and aggressive advocacy supports Davis and Haskell's pursuit of Plaintiff's claims here.  Since defendants do not and cannot claim that the case would have concluded earlier had the objectionable allegations been corrected, nor do they make any effort to parse the specific costs arising from the conduct

they object to, it is hard to discern with a "high degree of specificity", any delay or "multiplication of the proceedings" <u>Enmon v. Prospect Capital Corp.</u>, 675 F.3d 138, 143 (2d Cir. 2012).

### III.     THERE IS NO LAW FIRM LIABILITY UNDER 28 USC § 1927.

Defendants move only under 28 USC § 1927, for solely SGB to pay costs.  That section reads:

> Any *attorney or other person* admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy *personally* the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C.A. § 1927 (emphasis added).

Although there is debate on the issue, the majority of cases and all of the appellate authority hold that a law firm, as opposed to individual attorneys, cannot be sanctioned pursuant to § 1927.  The only circuit courts to have ruled squarely on the issue, the Sixth and Seventh, have rejected law firm liability under § 1927. <u>BDT Products, Inc. v. Lexmark Int'l, Inc.</u>, 602 F.3d 742, 751 (6th Cir. 2010) ("...there is no reason to consider a law firm a "person" under the statute... law firms are not 'admitted' to 'conduct cases' in court... 28 U.S.C. § 1927 does not authorize the imposition of sanctions on law firms. We thus conclude that the district court erred insofar as it imposed sanctions...under § 1927"); <u>Claiborne v. Wisdom</u>, 414 F.3d 715, 723 (7th Cir. 2005) (rejecting the application of § 1927 to a law firm because "It is too much of a stretch to say that a law firm could also be characterized as such a person").[4]

---

[4] Although the Second Circuit, in <u>Apex Oil Co. v. Belcher Co. of New York</u>, 855 F.2d 1009 (2d Cir. 1988) sustained § 1927 sanctions against a firm, the issue of whether there is firm liability under the section was not before the Court.  The case was decided shortly before the Supreme Court rejected firm sanctions under Rule 11 in <u>Pavelic & LeFlore v. Marvel Entm't Grp.</u>, 493 U.S. 120 (1989) which also arose from the Second Circuit.  <u>Marvel</u> was then abrogated by an amendment to Rule 11.  No similar amendment was made to § 1927, and the cases that support

The Fourth Circuit likewise expressed strong skepticism that § 1927 can be applied to a law firm, noting "we are doubtful that the other sanctions theories will support sanctions against an entire firm rather than against the individual lawyers," without actually ruling on that basis. Blue v. U.S. Dep't of Army, 914 F.2d 525, 549 (4th Cir. 1990).

In addition to the settled law in the Sixth and Seventh Circuits, and the writing on the wall in the Fourth, other district courts, including recently the Eastern District of New York, have rejected the application of § 1927 to a law firm, as opposed to an individual. See Rates Tech., Inc. v. Mediatrix Telecom, Inc., 05-CV-2755 (JS) (AKT), 2012 WL 948661, at *2 (E.D.N.Y. 2012) ("...reasoning of BDT and Claiborne persuasive in that law firms are neither attorneys nor "person [s] admitted to conduct cases in any court," and thus are not covered by Section 1927") (internal citations omitted); Rodriguez v. Marble Care Int'l, Inc., 863 F. Supp. 2d 1168, 1178-79 (S.D. Fla. 2012); In re Greater Se. Cmty. Hosp. Corp., I, 2010 WL 3123086, at *22 (Bankr. D.D.C. 2010).

On the other hand, in 1990, Judge Sweet, here in the Southern District on New York, held that "the counsel of record for plaintiff until just short of the end of this proceeding, *the head of the law office that bears his name* ("the Law Offices of Arie E. David) and that employed or associated with the lawyers working on this case for plaintiff, *and, dispositively, an active individual participant in the conduct of these proceedings*", could be sanctioned under § 1927. Brignoli v. Balch Hardy & Scheinman, Inc., 735 F. Supp. 100, 102 (S.D.N.Y. 1990) (emphasis added).  Unlike in the italicized portion of the Brignoli quote, Stoll, Glickman & Bellina, LLP, is a 13 year old firm with three equity partners, in which the allegedly offending attorneys had no equity, over which they had scant operational control, and for whom they worked at most for 25

---

Plaintiff's position such BDT Products, Claiborne, Blue and Rates Tech, here cited, in large part cite Marvel's rationale.

months.  <u>Brignoli</u> was also considered and rejected more recently by Judge Seybert in the Eastern District of New York, in <u>Rates</u>, 2012 WL 948661, who she wrote that "law firms are neither attorneys nor person [s] admitted to conduct cases in any court, and thus are not covered by Section 1927" (citations and quotations omitted).

Finally, as with <u>Rates</u>, defendants have not "attempted to explain how the Law Firms themselves acted in bad faith." <u>Rates</u>, at  *2.  In the event that the Court is inclined to issue sanctions on its own under its inherent powers (a vehicle requiring the same bad faith showing as § 1927), SGB respectfully requests a further opportunity to be heard. <u>United States v. Seltzer</u>, 227 F.3d 36, 42 (2d Cir. 2000).

## <u>CONCLUSION</u>

While the conduct complained of in this case was not ideal, the attorneys who litigated this difficult case operated consistently in good faith, and there can be no "clear showing" that any of their actions were "vexatious", or motivated by an "improper purpose".  Defendants have made no showing that the proceedings were "multiplied" by the conduct complained of, nor have defendants even attempted to identify which of their costs were "excess".  There has been no reference to any wrongdoing by the firm itself, and law firms are simply not sanctionable under 28 U.S.C. 1927.  We respectfully request the Court deny defendants' motion.

March 15, 2015
Brooklyn, NY

_____

Andrew B. Stoll (AS8808)
Stoll, Glickman & Bellina, LLP
475 Atlantic Avenue, 3rd Floor
Brooklyn, New York 11217
astoll@stollglickman.com

10